IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

John T. Marshall, )
    Plaintiff, )
)
v. ) 1:18cv19 (AJT/TCB)
)
United States of America, et al., )
    Defendants. )

## MEMORANDUM OPINION

John T. Marshall, a federal inmate proceeding pro se, has filed a civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq. Defendants United States of America, Dr. Mark DiCocco, and Commander Deborah Winbush have filed a Motion for Summary Judgment as well as a memorandum of law with exhibits in support thereof.[1] Dkt. Nos. 19-20. Plaintiff received the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. No. 19-1. He has submitted a verified declaration with exhibits and a Response to the Motion for Summary Judgment. Dkt. Nos. 31-32. Defendants thereafter submitted a Reply to Plaintiff's Response, and plaintiff, having received leave to do so, filed a Surreply in Opposition to Defendants' Motion for Summary Judgment. Dkt. Nos. 36, 44. Defendants' Motion for Summary Judgment is now ripe for adjudication. For the reasons stated below, the motion will be granted, and plaintiff's claims against these defendants will be dismissed.

---

[1] The remaining defendant, Dr. Prakash, has a Motion to Dismiss pending.

## I. Background [2]

The record on summary judgment establishes the following. Plaintiff is a federal inmate incarcerated at FCC Petersburg. Compl. ¶ 5. A May 21, 2015, MRI of plaintiff's left knee revealed that plaintiff had a torn meniscus and possible damage to his anterior cruciate ligament ("ACL"). Pl.'s Decl. ¶¶ 26, 28; Defs'. MSJ, DEX 1 ¶ 14. Plaintiff's injuries were classified as "routine." Defs'. MSJ, DEX 1 ¶ 15.

On June 16, 2015, medical staff at FCC Petersburg submitted a consultation request for an onsite evaluation by an outside orthopedic surgeon regarding plaintiff's condition. Pl.'s Decl. ¶ 29; Defs'. MSJ, DEX 1 ¶ 15. The orthopedic surgeon saw plaintiff on October 10, 2015, and recommended surgery, although he did not specify a timeframe for the surgery. Pl.'s Decl. ¶ 31; Defs'. MSJ, DEX 1 ¶ 16. Employees at Petersburg filed an administrative request for approval of plaintiff's surgery on October 20, 2015, and the request was approved by BOP on November 13, 2015. Defs'. MSJ, DEX 1 ¶ 17.

On January 8, 2016, plaintiff underwent surgery on his left knee. Pl.'s Decl. ¶ 40; Defs'. MSJ, DEX 1 ¶ 19. The orthopedic surgeon stated that plaintiff should be evaluated 10 to 14 days post-surgery, however, he did not specify who should perform the evaluation. Pl.'s Decl. ¶ 41; Defs'. MSJ, DEX 1 ¶ 25, Att. 17. Upon return to Petersburg that day, medical staff evaluated

---

[2] Prior to initiating this action, plaintiff underwent two surgeries on his left knee. Other than the general assertion that defendants delayed scheduling both surgeries, the factual allegations in plaintiff's complaint only address defendants' actions between May 21, 2015, and May 15, 2017. The claims plaintiff presented to the Federal Bureau of Prisons ("BOP")—a prerequisite to filing an action under the FTCA, Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986)—deal only with actions taken in response to plaintiff's first surgery. Because "plaintiffs may not raise new claims without amending their complaints," Barclay White Skanska, Inc. v. Battelle Memorial Institute, 262 Fed.Appx. 556, 564 (4th Cir. 2008), only plaintiff's allegations that relate to actions taken by defendants between May 21, 2015 and May 15, 2017, are properly before the Court in this action. It is also noted that plaintiff's claims outside the timeframe of May 21, 2015, to May 15, 2017, may be unexhausted, which would make amendment of the complaint futile.

plaintiff, prescribed him oxycodone/acetaminophen for a period of three days, and instructed him to return three days later, but he did not. Defs'. MSJ, DEX 1 ¶ 19. Plaintiff was not evaluated for physical therapy. Pl.'s Decl. ¶ 66. Neither DiCocco nor the orthopedic surgeon recommended physical therapy because the surgery was a "routine procedure." Defs'. MSJ, DEX 1 ¶ 29.

Plaintiff received the oxycodone/acetaminophen three times on January 9 and 10, 2016, and twice on January 11, 2016, because he did not show up for his third dose that day. Defs'. Reply, DEX 11. Despite receiving the medication, plaintiff filed a triage form on January 10, 2016, stating that he was in pain and not receiving medication. Pl.'s Decl., Att. 4. On January 11, 2016, medical staff placed plaintiff on four weeks of medical convalescence, during which time he was not allowed to work. Defs'. MSJ, DEX 1 ¶ 20. On January 21, 2016, plaintiff was seen by medical staff for an unrelated medical issue, but he did not complain of knee pain.[3] Id. ¶ 22, Att. 12. Thus, although plaintiff was seen by medical staff 13 days after his surgery, it appears as though his knee was not evaluated. Id.

On January 29, 2016, medical staff granted plaintiff's request for a first-floor cell assignment. Id. ¶ 22. Plaintiff returned to his regular work responsibilities on February 9, 2016. Id. ¶ 23. On February 10, 2016, plaintiff submitted a triage form complaining of knee pain. Pl.'s Decl., Att. 4.

Plaintiff was scheduled to see medical staff on March 18, 2016, but left before being seen. Id. ¶ 46; Defs'. MSJ, DEX 1 ¶ 24. Plaintiff returned on March 23, 2016, complaining of

---

[3] Plaintiff suffered from other medical issues, including, but not limited to, hypertension and "a GI ulceration in the past." Defs'. MSJ, DEX 1 Atts. 42-43. Plaintiff was prescribed daily aspirin for his hypertension. Pl.'s Surreply at 5. Thus, plaintiff always had access to over the counter pain medication. Id. at 10.

3

knee pain. Pl.'s Decl. ¶ 47; Defs'. MSJ, DEX 1 ¶ 25. That day, Winbush[4] noted that plaintiff's discharge instructions called for a post-surgical follow-up 10-14 days after the procedure, prescribed plaintiff ibuprofen, provided plaintiff with a knee brace, and requested an outside consultation with an orthopedic surgeon. Pl.'s Decl. ¶¶ 50-52; Defs'. MSJ, DEX 1 ¶ 25.

Plaintiff was evaluated by DiCocco on April 14, 2016, for his hypertension, however, after plaintiff complained of knee pain, DiCocco performed a "Lachman's test" on plaintiff's knee, which indicated potential injury to plaintiff's ACL. Defs'. MSJ, DEX 1 ¶ 26. However, because "the results were weak at best," DiCocco recommended plaintiff undergo another MRI. Id. The next day, plaintiff was seen by the outside orthopedic surgeon, who conducted x-rays and recommended a follow-up evaluation one month later, but not surgery. Pl.'s Decl. ¶ 53; Defs'. MSJ, DEX 1 ¶ 27.

On April 17, 2016, plaintiff submitted a triage form complaining of knee pain. Pl.'s Decl., Att. 4. Plaintiff was seen by Winbush on April 21, 2016, and she submitted a consultation request for an MRI and a follow-up appointment with the orthopedic surgeon, provided plaintiff with a compression garment, informed plaintiff of knee exercises, confirmed that plaintiff was taking anti-inflammatory drugs which are used to treat pain, and renewed plaintiff's first-floor cell assignment for six months. Id. ¶ 54; Defs'. MSJ, DEX 1 ¶ 28. Plaintiff's injuries were classified as non-emergent. Defs'. MSJ, DEX 1 ¶ 28.

---

[4] Defendants assert, and plaintiff concedes, that Winbush is immune from suit in her personal capacity due to her status as an employee of the Public Health Service. Dkt. No. 20, pp. 21-22; Dkt. No. 32, p. 23; see 42 U.S.C. § 233(a) (the FTCA is the "exclusive" remedy "for damage for personal injury... resulting from the performance of medical, surgical, dental, or related functions... by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment"). Accordingly, the claims against Winbush will be dismissed.

On July 14, 2016, plaintiff received an MRI on his left knee, the results of which indicated the presence of a routine, non-emergent injury. Pl.'s Decl. ¶ 56; Defs'. MSJ, DEX 1 ¶ 31. On July 22, 2016, plaintiff was once again seen by the outside orthopedic surgeon who, based on the results of the MRI, recommended plaintiff undergo a second surgery, although he did not indicate a timeframe for the surgery. Pl.'s Decl. ¶ 57; Defs'. MSJ, DEX 1 ¶ 32.

In response to a July 31, 2016 triage form, plaintiff was scheduled for an appointment on August 3, 2016, but he did not appear because he was not informed of the appointment. Pl.'s Decl. ¶ 58; Defs'. MSJ, DEX 1 ¶ 33. After receiving another triage form filed by plaintiff on August 5, 2016, plaintiff was seen on August 19, 2016, and prescribed a seven-day course of naproxen, a pain reliever. Pl.'s Decl. ¶¶ 59-60; Defs'. MSJ, DEX 1 ¶ 34. On September 7, 2016, plaintiff was approved for a second knee surgery that was classified as routine. Defs'. MSJ DEX 1 ¶ 35.

In response to a triage form complaining of continued knee pain, plaintiff was seen on September 9, 2016, at which time Winbush prescribed a 60-day supply of indomethacin, a pain reliever, and renewed plaintiff's "lower bunk pass" through April 2017. Pl.'s Decl. ¶¶ 62-63; Defs'. MSJ, DEX 1 ¶ 36. Plaintiff was also advised that his surgery was pending. Defs'. MSJ, DEX 1 ¶ 36.

On October 19, 2016, in response to a work-related knee injury, Winbush renewed plaintiff's prescription for pain medication for 90 days, issued plaintiff crutches, placed him on "work idle," and instructed him on recovering from his injury. Pl.'s Decl. ¶ 64; Defs'. MSJ, DEX 1 ¶ 37. Two days later, plaintiff sent an electronic request to DiCocco to expedite his surgery. Pl.'s Decl. ¶ 65. On December 14, 2016, plaintiff was prescribed a new pain relief medication, meloxicam, for a period of 180 days. Defs'. MSJ, DEX 1 ¶ 38. On December 15,

2016, January 23, 2017, January 26, 2017, January 27, 2017, February 16, 2017, and February 25, 2017, plaintiff submitted triage forms and electronic requests to be seen to the medical staff, complaining of knee pain and inquiring about his second knee surgery. Pl.'s Decl., Atts. 4-6.

On March 2, 2017, the medical staff submitted a request for plaintiff to be seen by an orthopedic surgeon. Defs'. MSJ, DEX 1 ¶ 39. The surgeon saw plaintiff the following day, conducted x-rays, and once more concluded that plaintiff should have knee surgery but did not specify a time frame for the surgery. Id. DiCocco evaluated plaintiff at the chronic care clinic on March 7, 2017. Defs'. Reply, DEX 10 ¶ 3. He examined plaintiff's knee and renewed plaintiff's prescriptions, including one for aspirin. Id.

On March 14, 2017, March 31, 2017, April 14, 2017, April 19, 2017, and May 5, 2017, plaintiff submitted triage forms and electronic requests to be seen to the medical staff, complaining of knee pain and inquiring about his second knee surgery. Pl.'s Decl., Atts. 4-6. On May 8, 2017, plaintiff was prescribed indomethacin and his lower bunk pass was once more renewed. Defs'. MSJ, DEX 1 ¶ 40. On May 15, 2017, plaintiff underwent his second knee surgery.[5] Pl.'s Decl. ¶ 72; Defs'. MSJ, DEX 1 ¶ 42.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of

---

[5] As previously stated, the actions taken after plaintiff's second surgery, including the allegation that he removed his infected stiches, are not properly before the Court in this matter.

6

law, the nonmoving party "must show that there is a genuine dispute of material fact for trial... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. FTCA Claims

The FTCA provides a limited waiver of the United States' sovereign immunity to allow actions seeking monetary relief for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The government is only "liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and the extent of its liability is determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1). Here, where plaintiff's allegations surround events taking place in Virginia, Virginia law governs the manner and extent to which the United States may be liable as a defendant. Accordingly, the Virginia Medical Malpractice Act ("VMMA"), Va. Code §§ 8.01-581.1, et seq., provides the framework upon which to analyze plaintiff's FTCA claims. See Starns v. United States, 923 F.2d 34 (4th Cir. 1991) (applying VMMA in FTCA action involving federally operated health care providers in Virginia).

> As a threshold matter, the Virginia Medical Malpractice Act ("VMMA"), Va. Code §§ 8.01-581.1, et seq., requires that a party alleging medical malpractice obtain an expert certification of merit prior to serving process upon defendant. Va. Code § 8.01-20.1. Significantly, the failure to comply with this certification requirement is grounds for dismissal. Equally significant is that the VMMA provides only a limited exception to the certification requirement; the requirement may be excused only where "plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary

7

because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va. Code § 8.01-20.1.

Parker v. United States, 475 F. Supp. 2d 594, 596-97 (E.D. Va.) (citations omitted), aff'd, 251 F. App'x 818 (4th Cir. 2007). "This exception applies only in 'rare instances.'" Baxter v. United States, 2016 WL 3618363, at *4 (E.D. Va. July 6, 2016) (quoting Beverly Enters.-Va., Inc. v. Nichols, 441 S.E.2d 1, 3 (Va.1994)).

Plaintiff's claims of negligence are best classified as (1) a claim that plaintiff's post-surgical medical care was inadequate due to a lack of instruction, physical therapy, or a follow-up appointment with his surgeon; (2) a claim that defendants failed to provide plaintiff with pain medication for long periods of time; (3) a claim that defendants needlessly delayed his knee surgeries; and (4) a claim that defendants failed to schedule appointments or respond to plaintiff's repeated written and digital communications.

Plaintiff has admittedly failed to obtain an expert certification but argues that his claims fall into the narrow "common knowledge" exception.[6] For the reasons stated below, plaintiff's allegations of negligence call into question the professional medical judgment of defendants as well as the standard of care that physicians must provide. They therefore do not fall within the range of a jury's common knowledge and experience. See Parker, 475 F.Supp.2d at 597 ("Where... a plaintiff 'calls into question' a 'quintessential professional medical judgment,' the matter 'can be resolved only by reference to expert opinion testimony'"); see also Perdieu v. Blackstone Family Practice Center, 264 Va. 408, 420 (2002) (expert testimony is usually

---

[6] Plaintiff also argues that some of his claims do not rise to the level of medical malpractice, but rather are claims of "ordinary negligence." Because all of plaintiff's claims relate to the provision of medical care by medical professionals, his argument is of no moment, and all of plaintiff's negligence claims are, in fact, medical malpractice claims that fall under the VMMA's certification requirement.

8

necessary to establish the applicable standard of care, a deviation from that standard, and whether the deviation was a proximate cause of plaintiff's damages).[7]

### A. **Lack of Post-Surgical Care and Failure to Arrange Follow-up Appointment** [8]

Plaintiff asserts that, after his first surgery, defendants failed to provide physical therapy, follow-up care or instruction, and his fourteen-day follow-up appointment. As an initial matter, plaintiff's claim that he was not afforded any post-surgical care or instruction is not supported by the factual record. Upon return to Petersburg the day of plaintiff's surgery, medical staff evaluated plaintiff, prescribed him oxycodone/acetaminophen for a period of three days, and instructed him to return to health services three days later. Plaintiff received the medication but did not return to medical services until September 21, 2016. Nevertheless, the medical staff placed him on four weeks of medical convalescence, suspending his work responsibilities. On January 29, 2016, medical staff granted plaintiff's request for a first-floor cell assignment, and on April 21, 2016, plaintiff was seen by Winbush, who submitted a consultation request for an MRI and an appointment with the orthopedic surgeon, provided plaintiff with a compression garment, informed plaintiff of knee exercises, confirmed that plaintiff was taking anti-inflammatory drugs, and renewed plaintiff's first-floor cell assignment for six months.

It is undisputed, then, that plaintiff received some form of follow-up care after his first surgery. Therefore, plaintiff's argument that his post-surgical treatment was inappropriate is

---

[7] Defendants argue that plaintiff is collaterally estopped from asserting that his claims do not require the support of an expert certification based on his admission of such in Marshall v. United States, et al., 1:17cv479 (GBL/IDD). Because plaintiff's claims require an expert certification, and will be dismissed on this ground, defendants' estoppel argument need not be addressed.

[8] In his Response to defendants' Motion for Summary Judgment, plaintiff argues that his alleged deprivation of physical therapy constitutes a separate claim to his alleged deprivation of follow-up care or instruction. Dkt. No. 32 at 3. Because the claims are so similar in nature and both relate to plaintiff's treatment immediately after his first surgery, they will be considered together.

9

really a claim that he did not receive the level of care he believes he should have, including physical therapy, as well as more care and instructions. The question of whether doctors behaved appropriately in providing a particular course of treatment following an operation is a question of professional medical judgment for which plaintiff would require an expert certification under the VMMA. See Winston v. United States, 2013 WL 4829292 (E.D. Va. Sept. 10, 2013) (finding that the plaintiff's claim of improper post-surgical treatment and examination, which consisted of provision of pain medication and antibiotics, is a question of professional medical judgment that must be resolved through expert testimony and is therefore not within the common knowledge of a jury). In addition, whether a non-specialist medical provider can provide adequate post-surgical care is a question answerable only by an expert. See Harper v. Gore, 2017 WL 2573415, at *4 (E.D. Va. June 13, 2017) (finding expert certification required for claim that non-specialists deviated from standard of care in treating plaintiff instead of referring him to specialist).

As to plaintiff's claim that defendants were negligent in not providing an appointment 10-14 days after his surgery, this claim also requires an expert certification. Whether the timing of a follow-up appointment and the failure of a patient to receive one in that window of time constitutes a deviation from the relevant standard of care is a question reserved to the expertise of physicians. See Bond v. United States, 2008 WL 4774004, at *3 (E.D. Va. Oct. 27, 2008) (holding VMMA certification required for plaintiff's claim that two-month delay in examination of finger caused by defendants constituted improper treatment). For these reasons, plaintiff is not exempt from the VMMA's expert certification requirements as to these claims.

## B. Failure to Provide Pain Medication for Prolonged Periods

Plaintiff alleges that defendants "did not treat his pain <u>at all</u> for weeks at a time, allowing his pain medications to run out despite his pleas for pain treatment." As was the case with his first set of claims, plaintiff's argument is contradicted by the factual record. Plaintiff was prescribed a continuous dose of aspirin even before his surgery occurred. In addition, Plaintiff was prescribed three days of oxycodone/acetaminophen on January 8, 2016, seven days of ibuprofen on March 23, 2016, 180 days of aspirin on April 14, 2016, seven days of naproxen on August 19, 2016, 60 days of indomethacin on September 9, 2016, 180 days of meloxicam on December 14, 2016, and 90 days of indomethacin on May 8, 2017.

Plaintiff claims that the need for pain medication is within the range of the jury's common knowledge and experience, however, based on the record, plaintiff was never completely deprived of pain medication. A physician's decision to prescribe or recommend certain courses of treatment for a patient's pain is a question of professional medical judgment, and an expert certification is therefore required to challenge it. See Parker, 475 F.Supp.2d at 597 ("[I]t is difficult to imagine that a factfinder, equipped solely with an average person's common knowledge and experience, may appropriately judge, inter alia, (i) what actions the prison medical staff should have taken when plaintiff complained of headaches... and (iii) what the proper course of treatment was for plaintiff's condition."). Finally, the existence of plaintiff's other underlying medical concerns only renders the decision on when or what type of pain medication to prescribe further outside the realm of a juror's common knowledge. For these reasons, plaintiff cannot escape the expert certification requirement as to this claim.

## C. Delay of Surgery

Plaintiff asserts that defendants "deviated from the applicable standard of care by delaying... plaintiff's surgeries." The timetable upon which physicians schedule care, as well as their reasons for making scheduling decisions, are matters of professional medical judgment. See Bond, 2008 WL 4774004, at *3 (holding that a claim that BOP officers failed to retrieve plaintiff from his cell in time for an orthopedic appointment and thereby caused a two-month delay in his treatment required VMMA certification because plaintiff would have to show that "failure to provide him with an orthopedic examination for his finger within two months deviated from the applicable standard of care, and that the delay caused permanent damage," issues clearly outside "the range of the jury's common knowledge and experience"); see also Rundle v. Carter, 91 Va. Cir. 177, 2015 WL 12591842, at *3 (Va. Cir. Ct. 2015) ("Given that a jury is unlikely to be equipped with the knowledge necessary to determine whether Defendants' failure to schedule Plaintiff's surgery according to her wishes... compl[ies] with or deviate[s] from the applicable standard of care, the Court finds that expert certification was necessary."). For these reasons, plaintiff was required to obtain an expert's medical certification prior to raising this claim.

The two in-circuit cases plaintiff cites to in support of his assertion that the delays in his surgeries were ordinary negligence are inapposite. See Knowles v. United States, 2014 WL 12681361 (E.D.N.C. Mar. 20, 2014); Krembel v. United States, 2017 WL 1058179 (E.D.N.C. Mar. 20, 2017). In Knowles, the plaintiff suffered an eye condition for which a specialist determined he needed surgery in four weeks. 2014 WL 12681361, at *1. Defendants, who were not medical professionals, failed to transport plaintiff to the scheduled surgery, only doing so over a year later, by which point permanent damage had occurred. Id. In Krembel, multiple

health care providers urged that plaintiff receive a specific type of cancer treatment "as soon as possible," but officials failed to schedule the procedure accordingly. 2017 WL 1058179, at *1. By the time plaintiff was scheduled to receive the treatment, the procedure was no longer feasible. 2017 WL 1058179, at *2. Unlike in Knowles and Krembel, where specialists ordered that the surgeries happen within a specified, short period of time, plaintiff's knee injury was deemed "routine" and "non-emergent," and the orthopedic surgeon never specified a timeframe for the surgeries. Because plaintiff's surgeries were scheduled as non-emergent, any delays in scheduling them did not amount to ordinary negligence. In addition, a lay person does not possess the knowledge to determine what level of delays in scheduling would pose serious health risks or constitute malpractice under these circumstances, therefore, an expert certification is necessary.

### D. Failure to Schedule Appointments or Respond to Inquiries

Plaintiff claims that defendants "failed to schedule requested appointments, respond to his triage form requests regarding pain and limited mobility, or respond to his paper and electronic requests seeking help." As with almost all of plaintiff's other FTCA claims, his allegations are not supported by the record. Plaintiff submitted triage forms dated January 10, 2016, February 10, 2016, April 17, 2016, August 25, 2016, December 15, 2016, January 26, 2017, February 16, 2017, March 14, 2017, April 19, 2017, and May 5, 2017. Plaintiff claims he never received a response to these forms, and although he may not have received a written response, the record establishes that plaintiff was seen by health services staff January 21, 2016, March 23, 2016, April 21, 2016, September 9, 2016, December 14, 2016, and May 8, 2017.

In addition, it is not within the common knowledge of a juror to determine the standard of care owed to a patient by a physician as it relates to doctor-patient communications and the

scheduling of appointments. Specifically, expert testimony would be needed to establish the appropriate number and frequency of appointments in light of a specific inmate's medical history. It is not within the common knowledge of jurors to determine how long specific lines of treatment should be allowed to carry on before attempting others. Indeed, these types of questions, ones that ask "what the proper course of treatment was for plaintiff's condition," are "quintessential professional medical judgment[s]" and "can be resolved only by reference to expert opinion testimony." Parker, 475 F.Supp.2d at 597 (quoting Callahan v. Cho, 437 F.Supp.2d 557, 563 (E.D. Va. 2006)).

For the reasons stated above, none of the claims raised by plaintiff, as presented on the record on summary judgment, are within the range of the jury's common knowledge and experience, and plaintiff was required to obtain an expert certification regarding his FTCA claims.[9] Because this matter was served prior to plaintiff obtaining an expert certification, plaintiff's FTCA claims will be dismissed.[10]

---

[9] Plaintiff has requested that, if an expert certification is required, the claims not be dismissed, and the proceedings be stayed for him to renew his motion for appointment of counsel. Inmates proceeding under the FTCA are not exempt from the certification requirement "despite the fact that his or her prisoner status adds hurdles to any attempt to obtain an expert." Kerr v. U.S. Dept. of Justice, 2008 WL 3928701, at *4 (E.D. Va. Aug 21, 2008). Thus, plaintiff's request to stay the proceedings will be denied.

[10] Plaintiff's reliance on Keitz v. Unnamed Sponsors of Cocaine Research Study, 510 F. App'x 254, 255 (4th Cir. 2013), for the proposition that the expert certification requirement does not apply to this case because he did not request service of his complaint is misplaced because, unlike in Keitz, the Court is not dismissing this case sua sponte, rather, the certification requirement is being raised by defendants. In addition, because plaintiff is an inmate proceeding in forma pauperis pursuant to 28 U.S.C. § 1915, the court was required to effect service on defendants. See Fed. R. Civ. P. 4(c)(3); Patterson v. McCormick, 2014 WL 2039966, at *5 (E.D. Va. May 15, 2014) ("[B]y granting a plaintiff leave to pursue his claim in forma pauperis, a district court shifts the responsibility for serving the complaint from the plaintiff to the court.") (internal quotation marks, citations, and alterations omitted). Finally, other cases filed by inmates proceeding in forma pauperis, and which have been served by the court pursuant to Rule 4(c)(3), have been dismissed on summary judgment due to plaintiff's lack of obtaining an expert certification. See, e.g., Winston v. United States, 2013 WL 4829292 (E.D. Va. Sept. 10, 2013), aff'd sub nom. Winston v. U.S., Fed. Bureau of Prisons, 568 F. App'x 198 (4th Cir. 2014).

## IV. Eighth Amendment Claims

Plaintiff claims that DiCocco is personally responsible for all of his medical care, and therefore, DiCocco violated his Eighth Amendment rights because he (1) did not schedule a follow up visit as stated in plaintiff's discharge papers, (2) delayed plaintiff's surgeries, (3) failed to provide plaintiff physical therapy, (4) treated plaintiff personally only twice, (5) did not respond to plaintiff's requests for medical assistance, and (6) failed to provide plaintiff with pain medication.[11]

Prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Plaintiff therefore must satisfy two distinct elements to succeed on a medical indifference claim. First, he must show the existence of a sufficiently serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. Appx. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).

Second, he must demonstrate that the defendant acted with deliberate indifference to that serious medical need. Under this second prong, mere negligence or even malpractice is not sufficient to constitute an Eighth Amendment violation; instead, plaintiff must prove deliberate indifference "by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851

---

[11] Because plaintiff "does not attempt to hold Dr. DiCocco liable as a supervisor," Dkt. No. 44 at 17, plaintiff's claims will not be analyzed under the standard for liability of supervisors set out in Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994).

(4th Cir. 1990) (recognized in Sharpe v. S. Carolina Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) as overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)); see also Daniels v. Williams, 474 U.S. 327, 328 (1986). To do so, the prisoner must show that a defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id.

The factual record does not support plaintiff's argument that DiCocco intentionally or recklessly disregarded plaintiff's medical needs. As to the affirmative actions taken by DiCocco, on the two occasions he personally evaluated plaintiff, he assessed and improved plaintiff's condition. On April 14, 2016, DiCocco performed a "Lachman's test" on plaintiff's knee and hypothesized that plaintiff had potentially injured his ACL. DiCocco then recommended that plaintiff undergo another MRI procedure to confirm this suspicion. On March 7, 2017, DiCocco examined plaintiff's knee and renewed plaintiff's prescriptions, including one for aspirin.

Assuming, arguendo, that DiCocco is personally responsible for all of plaintiff's medical care, the record establishes that plaintiff was not treated with deliberate indifference. More specifically, none of actions, or inactions, that plaintiff states DiCocco was responsible for were so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.[12]

First, as to plaintiff's claim that he was not scheduled for a post-surgical follow up appointment as stated in his discharge papers, the record, in the light most favorable to plaintiff, establishes that the first time his knee was evaluated post-surgery was on March 23, 2016, by Winbush. In response, he was evaluated by the outside orthopedic surgeon on April 15, 2016,

---

[12] It is noted that almost every case plaintiff relies on to support his Eighth Amendment claims was decided either on initial review of the complaint or on a motion to dismiss, both of which present a substantially different standard than a motion for summary judgment. Thus, each such case is inapposite.

16

who at that time only recommended a follow up appointment one month later. However, other than plaintiff's conclusory allegation that DiCocco ignored the discharge instructions, the record does not establish that the delay in plaintiff's post-surgical follow up appointment was the result of deliberate indifference. Wishneski v. Dona Ana Cty., 498 F. App'x 854, 861 (10th Cir. 2012) (affirming dismissal of claim on summary judgment were the record "convincingly demonstrates that any delays in treatment of [plaintiff's] condition were not attributable to deliberate indifference by [the doctor]"); Canady v. Wilkinson, 90 F. App'x 863, 865 (6th Cir. 2004) ("Any gaps in [plaintiff's] care were at most negligence and did not support an Eighth Amendment claim of cruel and unusual punishment."); Cole v. Winfield, 2012 WL 12897943, at *3 (E.D. Va. Nov. 30, 2012) ("[A]n inadvertent failure to provide adequate medical care does not constitute an unnecessary and wanton infliction of pain and is not repugnant to the conscience of mankind, and so does not amount to a violation of the Eighth Amendment, which instead requires a showing that the indifference was sufficiently egregious to offend evolving standards of decency.") (internal quotation marks and citation omitted), aff'd sub nom. Cole v. Harrison, 523 F. App'x 264 (4th Cir. 2013).

Second, plaintiff's claim that his surgeries were inordinately delayed does not establish deliberate indifference. The record establishes that both of his surgeries were classified as routine and were approved less than two months from the date the orthopedic surgeon recommended surgery. In addition, the surgeon never established a specific timeframe for the surgeries to occur. Because plaintiff's injuries were routine, the amount of time it took to schedule his surgeries did not amount to deliberate indifference. See Morrell v. United States, 2007 WL 1097871, at *4 (N.D.W. Va. Apr. 12, 2007) (holding delays for routine medical care not deliberate indifference "[b]ecause the BOP has tens of thousands of inmates in its care and

17

limited resources, it is not unreasonable for the BOP to prioritize inmate injuries and the care that they receive").

Third, plaintiff's claim that DiCocco failed to provide plaintiff physical therapy is no more than a complaint that he did not receive the medical care he believes he should have. Neither DiCocco nor the orthopedic surgeon recommended physical therapy based on plaintiff's routine, outpatient surgery. Plaintiff's difference of opinion is insufficient to establish deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action for deliberate indifference).

Fourth, plaintiff claims that DiCocco was deliberately indifferent because he only treated plaintiff twice and ignored his repeated requests for medical help. Even though DiCocco treated plaintiff only twice and did not personally respond to each of plaintiff's requests for medical assistance, plaintiff was seen, treated, or offered accommodations for his routine injuries more than fifteen times during the time period in question, and in response to almost each request for medical assistance he submitted. Treatment included pain medication, consultations with the outside orthopedic surgeon, x-rays, MRIs, lower-bunk privileges, time off work, medical equipment such as compression garments and knee braces, and information regarding self-therapy such as stretching. That DiCocco did not personally assist plaintiff at each medical visit or personally respond to each request for medical assistance is not enough to constitute deliberate indifference. See Muhammad v. Lappin, 2009 WL 3063310, at *13 (N.D.W. Va. Sept. 23, 2009) ("[I]t is well established that an inmate is not entitled to the doctor or course of treatment of his choice."), aff'd 379 F. App'x 308 (4th Cir. 2010).

Finally, plaintiff claims that DiCocco's failure to provide him with pain medication was deliberate indifference. However, the record does not support this claim. Rather, plaintiff had access to, at a at a minimum, over the counter pain medication at all times. In addition, when plaintiff complained of knee pain, he was provided with a variety of prescription pain medications including oxycodone/acetaminophen, naproxen, indomethacin, and meloxicam. Thus, plaintiff's claim must be taken as asserting that he did not receive the type or amount of pain medication he believes he should have. "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." Brown v. Lt. A. Banks, 2017 WL 427494, at *9 (E.D. Va. Jan. 31, 2017) (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)), aff'd sub nom. Brown v. Banks, 693 F. App'x 244 (4th Cir. 2017). Because the record establishes that plaintiff's situation was not "extreme," there was no deliberate indifference as to the way plaintiff's pain was treated with medication.

For the reasons stated above, the record establishes that DiCocco did not act with deliberate indifference regarding plaintiff's medical needs. Therefore, the Motion for Summary Judgment will be granted as to these claims.[13]

### V. Conclusion

For the reasons stated above, defendants United States of America, Mark DiCocco, and Deborah Winbush are entitled to summary judgment and their motion will be granted. An appropriate Order shall issue.

Entered this 20th day of March 2019.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge

---

[13] And DiCocco's assertion of qualified immunity need not be addressed.